# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

COMMUNITY ASSOCIATION
UNDERWRITERS OF AMERICA, INC.,

        Plaintiff,

    v.

CONSTRUCTION SYSTEM CORP. OF
ILLINOIS,

        Defendant.

No. 21 CV 6062

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Construction System Corp. of Illinois's motion under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I and III of plaintiff Community Association Underwriters of America's complaint and to strike its request for attorney's fees and delay damages. [31].[1] The motion is fully briefed. [36], [39]. For the following reasons, the motion to dismiss is granted in part with prejudice and in part without prejudice.

## Background

Plaintiff is an insurance agency insuring the properties of subrogor, Arbor Lane Condominium Association ("Arbor Lane"), located at 6550 and 6560 W. Belmont Street and 6561 W. School Street in Chicago, Illinois, [1] 2, at ¶ 3. In 2013, defendant contracted with McKenzie Management, the property management company representing and retained by Arbor Lane, [1] 5, at ¶ 26, to install a roof on Arbor Lane's property. [1] 2, at ¶ 6. In August 2020, the roof allowed infiltration of rainwater through several locations which caused extensive damage to Arbor Lane's property. [1] 2, at ¶ 7. As a result of the damage, Arbor Lane submitted an insurance claim to plaintiff and requested payment for the damages incurred from the water leak. [1] 2 ¶ 8. Pursuant to the policy, plaintiff became obligated and did pay Arbor Lane for the damages incurred as a result of the water leak. [1] 2, at ¶ 9. By paying Arbor Lane's claim, a subrogation relationship arose between plaintiff as subrogee and Arbor Lane as subrogor.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

In November 2021, plaintiff filed this suit in the U.S District Court for the Northern District of Illinois.[1].[2] Plaintiff's complaint asserts three claims against defendant: negligence (Count I); breach of implied warranties (Count II); and breach of contract (Count III). [1].[3]

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In ruling on a motion to dismiss, a court accepts all well-pleaded facts in the complaint as true and "draw[s] all reasonable inferences in the plaintiff's favor." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).

When a federal court exercises diversity jurisdiction, the court "look[s] to the choice-of-law rules of the forum state to determine which state's law applies to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (internal quotation marks omitted). "Under Illinois choice-of-law rules, forum law is applied unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Id.* (internal quotation marks omitted). Because there is no dispute that Illinois law controls here, the Court evaluates the plausibility of plaintiff's claims under Illinois substantive law. See *Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992) (district court "will apply the substantive law of the forum state if the case is a diversity case and neither party argues choice of law").

## Discussion

### A. Negligence

Count I of the complaint alleges that defendant owed plaintiff a duty of care to refrain from engaging in conduct that created a foreseeable likelihood of harm to the subject property. [1] 3, at ¶ 12. Plaintiff argues that defendant acted unlawfully in negligently installing the roof. [1] 3-4, at ¶ 16. Defendant argues that this claim is barred by Illinois' economic loss doctrine. [31] 1-2. In its response brief, plaintiff

---

[2] This court has subject-matter jurisdiction under 28 U.S.C. 1332(a)(1), because the matter in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties. Plaintiff is a citizen of California and Pennsylvania, and defendant is a citizen of Illinois. [1] 2, at ¶¶ 3-4.

[3] Defendant does not challenge Count II (breach of implied warranty) and therefore this count remains.

conceded that this claim should be dismissed. [36] 1. Accordingly, the Court grants defendant's motion to dismiss Count I with prejudice. The Court also strikes plaintiff's request for attorney fees and delay damages, which plaintiff also concedes should be dismissed. [36] 1.

## B. Breach of Contract

Count III of the complaint alleges that defendant breached the terms of its contract with McKenzie Management when damages were caused to Arbor Lane's property as a result of defendant's roof installation. [1] 6, at ¶ 27, 30. Plaintiff argues that due to the roof being improperly installed by defendant, rainwater infiltrated Arbor Lane's property through several locations which caused extensive damage to the property. [1] 2, at ¶ 7.

Defendant seeks dismissal of this claim on the grounds that (1) plaintiff is not an intended third-party beneficiary of the contract between it and McKenzie Management, [31] 3, and (2) plaintiff has failed to plausibly allege that McKenzie Management was an agent of Arbor Lane. [39] 2. In support, defendant contends that since there is no mention of Arbor Lane in the contract between McKenzie Management and defendant, then plaintiff could not be an intended third-party beneficiary of that contract. [31] 3-4. Defendant also argues that neither plaintiff's complaint nor any contract provided demonstrates an agency relationship between McKenzie Management and Arbor Lane. Therefore, plaintiff has not plausibly alleged an agency relationship that may allow plaintiff to enforce the contract as an undisclosed principal. [39] 2.

Plaintiff responds that it can enforce the contract because its subrogor, Arbor Lane, was an intended third-party beneficiary of that contract. [36] 2 (citing *Waterford Condo Ass'n v. Dunbar Corp.*, 432 N.E.2d 1009, 1011(1982)). Plaintiff also argues that it is entitled to enforce the contract because a principal-agency relationship existed between Arbor Lane and McKenzie Management, and under Illinois law an "undisclosed principal" like Arbor Lane "may, on showing the agency, claim the benefit of any transaction into which the agent entered, precisely as if the principal had entered into it himself." *O'Connor v. Vill. of Palos Park*, 333 N.E.2d 276, 281 (Ill. App. 1975); *see* [36] 3-4. In support, plaintiff points to a proposed second amended complaint attached to its opposition brief, which alleges that, "[u]pon information and belief, Defendant performed its roofing work pursuant to a contract with [Arbor Lane's] agent, McKenzie Management." [36-1] 4, at ¶ 17. Plaintiff has not sought leave to file the proposed amended complaint.

In reply, defendant does not dispute that Illinois law permits an undisclosed principal to enforce a contract that its agent entered on its behalf. Rather, defendant contends that plaintiff's original complaint does not allege the existence of a principal-agency relationship between Arbor Lane and McKenzie Management, and

3

that plaintiff has failed to provide sufficient evidence that such a relationship exists. [39] 2.

## 1. Intended Third-Party Beneficiary

In Illinois, there is a strong presumption that parties to a contract intend that the contract's provisions apply to only the contracting parties and not a third party. *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. 1989) (citing *Alaniz v. Schal Associates*, 529 N.E.2d 832, 834 (Ill. App. 1988)). To overcome that presumption, "the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Id.* "Liability to a third party must affirmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *Ball Corp.* 543 N.E.2d at 107, (citing *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (1931)). To determine whether another is a third-party beneficiary, the court must look to the contract to evaluate the parties' intentions. 543 N.E.2d at 107.

Additionally, it is not enough that the beneficiary reaps incidental benefits from the contract. *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 400 N.E.2d 918, 920 (1980). Only a direct beneficiary has a right against the promisor or promisee. *Id.* A third-party is a direct rather than incidental beneficiary when the contracting parties have manifested in their contract an intention to confer a benefit upon the third party. *Altevogt v. Brinkoetter*, 421 N.E.2d 182, 187 (1981).

For example, Illinois courts have found a party to be an intended third-party beneficiary when the party was named in the contract, had signed the contract, and where the contract provided for its consultation and approval before construction of a prison facility commenced. *Resnik*, 400 N.E.2d at 920. In *Resnik*, the court found that the State was an intended third-party beneficiary and that the parties intended to confer a direct benefit on the State because construction of a prison would directly benefit only the State, which had the expertise in prison construction. *Id.*

By contrast, Illinois courts have found that a property owner was not an intended third-party beneficiary of a contract between a general contractor and subcontractor who performed work on the property when the contract explicitly stated that there would be no relationship between the property owner and the subcontractor. *Ball Corp.*, 543 N.E.2d at 107. Similarly, a property owner was not an intended third-party beneficiary of contracts executed between its tenants and contractors when there was no mention of the property owner in the contracts. *See Harelysville Ins. Co. v. Mohr Architecture, Inc.*, --- N.E.3d ---, 2021 WL 1626168, ¶¶ 40–44 (Ill. App. Apr. 27, 2021) (holding that an insurance agent was not a third-party beneficiary where the contracts had no mention of the property owner besides the

4

address of the property and the term "owner", which the court found referred to the tenants of the property).

Illinois courts have also recognized that the inclusion of a property's address on a contract does not necessarily show an intent to benefit the property owner.[4] *See Wheeling Trust & Sav. Bank v. Tremco Inc.*, 505 N.E.2d 1045, 1048 (Ill. App. 1987) (holding more than reference to the delivery address of construction materials is required to demonstrate the intent to bind the building owner as a third-party beneficiary). An omission of any reference to the property owner could indicate that the intention of the contracting parties was to decline making the property owner a third-party beneficiary. *Salvi v. Vill. of Lake Zurich*, 66 N.E.3d 894, 904 (Ill. App. 2016). For construction contracts, it is not sufficient for the contracting parties to merely know, expect, or intend that others will benefit from the construction, *see 155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 374 (Ill. App. 1991), or that a third party will be using the building constructed. *Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 643 (Ill. App. 2005). To be a direct beneficiary, contracting parties must have intended for the performance of the contract to directly benefit the third party. *Doyle v. Vill. of Tinley Park*, 115 N.E.3d 1069, 1077 (Ill. App. 2018).

The Court concludes that plaintiff has not plausibly alleged that it is an intended third-party beneficiary of the contract between defendant and McKenzie Management. The "strong presumption" is that the contract at issue only applies to McKenzie Management and defendant. *Sosa*, 8 F.4th at 639. To overcome this presumption, the implication must be so strong as to be an express declaration that the contract was intended to apply to plaintiff. *Ball Corp.*, 543 N.E.2d at 107. Plaintiff argues that, because the properties identified in the roofing contract are Arbor Lane's properties, the inclusion of those properties on the contract practically amounts to an express declaration of the intent to benefit plaintiff. [36] 3. However, the intention must be shown by an "express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Sosa*, 8 F.4th at 639; *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. 2009). Here, the roofing contract does not mention Arbor Lane by name, [1-1], and the inclusion of a property address does not necessarily show the intent to benefit a third party. *Wheeling Trust & Sav. Bank*, 505 N.E.2d at 1048. Likewise, that Arbor Lane was not expressly included in the contract may signify that defendant and McKenzie did not intend for Arbor Lane to be a beneficiary of the contract. *See Salvi*, 66 N.E.3d at 904. Finally, it not sufficient that Arbor Lane might have benefitted from the contract. *See 155 Harbor Drive Condominium Ass'n*, 568 N.E.2d at 374.

---

[4] In the *Harleysville* complaint, the plaintiff attached a project contract which showed the address of subrogor's property, but there was no explicit reference to subrogor. *Harelysville Insurance Co. v. Mohr Architecture, Inc.*, 2021 IL App (1st) 192427, ¶ 35.

For all of these reasons, the Court concludes that plaintiff has not plausibly alleged that it is an intended third-party beneficiary of the contract between defendant and McKenzie.

## 2. Principal-Agency Relationship

Plaintiff argues that because McKenzie Management is an agent of Arbor Lane, then Arbor Lane may assume all rights and obligations of the contract as an undisclosed principal. [36] 4.

In Illinois, upon demonstrating an agency relationship, an undisclosed principal may "claim the benefit of any transaction into which the agent entered, precisely as if the principal had entered into it himself." *O'Connor v. Vill. of Palos Park*, 333 N.E.2d 276, 282 (Ill. App. 1975); *see also Brunswick Leasing Corp. v. Wisconsin Cent., Ltd.*, 136 F.3d 521, 526 (7th Cir. 1998) (generally, an undisclosed principal may "step into the shoes" of his agent and assume all rights and obligations of a contract that the agent entered on the undisclosed principal's behalf).

As noted above, defendant does not dispute that, under Illinois law, an undisclosed principal is entitled to enforce a contract that its agent entered on its behalf. Rather, defendant argues that plaintiff's original complaint does not allege the existence of a principal-agency relationship between Arbor Lane and McKenzie Management, and that plaintiff has not offered sufficient evidence to establish that such a relationship exists. [39] 2-3.

Based on the pleadings currently before the Court, the Court finds that plaintiff has not plausibly alleged that a principal-agency relationship exists between Arbor Lane and McKenzie Management.[5] Most importantly, the original complaint contains no allegations of such a relationship; only the proposed second amended complaint–which plaintiff has not sought leave to file–addresses this issue. Furthermore, even if the Court were inclined to consider the proposed amended complaint, the Court would find its allegations of a principal-agency relationship to be conclusory. "Under Illinois law, a complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. Merely pleading the legal conclusions of agency is insufficient." *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 705 (N.D. Ill. 2014) (internal citation and quotation marks omitted). Here, however, the proposed amended complaint alleges only that, "upon information and belief," McKenzie Management was Arbor Lane's agent. [36-1] 5, at ¶ 17. This is simply a legal conclusion, not a plausible factual allegation. To the extent plaintiff wishes to proceed with the breach-of-contract claim on the ground

---

[5] In so concluding, the Court does not rely on defendant's arguments that plaintiff has failed to prove the existence of an agency relationship. "At the motion to dismiss stage . . . no factual evidence is required to prove any of Plaintiff's claims." *Dawkins v. NR 1 Transp., Inc.*, No. 20 C 4063, 2021 WL 4125086, at *5 (N.D. Ill. Sept. 8, 2021).

that Arbor Lane was an undisclosed principal of McKenzie Management, plaintiff must, within twenty-one days of the date of this opinion, file a motion for leave to file an amended complaint that is accompanied by (1) a copy of the proposed amended complaint and (2) a brief of no more than five pages explaining how the proposed complaint cures the deficiencies identified in this decision. Within fourteen days thereafter, defendant may file a response brief of no more than five pages. Nothing in this decision prohibits the parties from reaching an agreement, through the meet-and-confer process, as to whether plaintiff's proposed amended complaint plausibly alleges a breach of contract claim based on the undisclosed-principal theory (in which case the amended complaint could be filed by agreement, and the parties could avoid the need for and costs associated with further motion practice).

## Conclusion

For the reasons set forth above, defendant's motion to dismiss [31] is granted with prejudice as to Count I and plaintiff's request for attorney's fees and delay damages. The motion is granted without prejudice as to Count III. Plaintiff's motion for leave to file an amended complaint is due on November 21, 2022, and defendant's response, if any, is due on December 5, 2022.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 31, 2022**